IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In Re:

|  |  |
|---|---|
| MARY M MCDERMOTT | CHAPTER 13 |
| DEBTOR | BANKRUPTCY NO 16-17792 |

MARY M MCDERMOTT
    MOVANT

    v.

THE BANK OF NEW YORK MELLON FKA
THE BANK OF NEW YORK, AS TRUSTEE
FOR THE CERTIFICATEHOLDERS OF CWABS
INC., ASSET-BACKED CERTIFICATES,
SERIES 2007-5
    RESPONDENT/CREDITOR

**ORDER AUTHORIZING SALE OF  REAL ESTATE
AND TO PERMIT DISTRIBUTION OF SALE PROCEEDS**

AND NOW, upon the Motion of Mary M. McDermott, Debtor to Sell Real Estate located at 6423 Radcliffe Street Bristol PA 19007 ("the Property") on the terms and conditions indicated in the Agreement of Sale attached hereto as Exhibit A as well as the proposed HUD attached hereto as Exhibit B, and with the consent of  THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR CERTIFICATEHOLDERS OF CWABS INC., ASSET-BACKED CERTIFICATES, it is hereby **ORDERED** as follows:

1. Pursuant to 11 U.S.C.  §363(b), the Debtor is **AUTHORIZED**  to sell the Property for the sale price shall be One Hundred Thirty Five Thousand Dollars; ($135,000.00) in accordance with the Agreement of Sale;

2.  Settlement shall occur on or before **June 29, 2018**;

3. The sale is subject to the attached Approval Letter.

4. Should the sale not occur on or before **June 29, 2018**, then this approval order of the Court shall be deemed void and further order of the Court would be required to approve the sale.

Date:  6/25/18

_____

**ERIC L. FRANK
U.S. BANKRUPTCY JUDGE**

DocuSign Envelope ID: FFD003E1-42A1-4B89-9E3E-0795FE0EB6FB

**EXHIBIT A**

## STANDARD AGREEMENT FOR THE SALE OF REAL ESTATE

ASR

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors (PAR)

### PARTIES

BUYER(S): Thomas DeStefano or assigns

SELLER(S): Nancy McDermott poa for Mary McDermott

BUYER'S MAILING ADDRESS:
8 Monarch Drive
Amherst NY 14226

SELLER'S MAILING ADDRESS:
6423 Radcliffe Street
Bristol, PA 19007

### PROPERTY

ADDRESS (including postal city) 6423 Radcliffe Street Bristol, PA 19007

in the municipality of _____ ZIP _____

in the School District of _____, County of _____

Tax ID #(s): _____, in the Commonwealth of Pennsylvania.

Identification (e.g., Parcel #; Lot, Block; Deed Book, Page, Recording Date): _____ and/or

### BUYER'S RELATIONSHIP WITH PA LICENSED BROKER

☒ **No Business Relationship (Buyer is not represented by a broker)**

Broker (Company) _____

Company License # _____
Company Address _____

Company Phone _____
Company Fax _____

Broker is (check only one):
☐ Buyer Agent (Broker represents Buyer only)
☐ Dual Agent (See Dual and/or Designated Agent box below)

Licensee(s) (Name) _____

State License # _____
Direct Phone(s) _____
Cell Phone(s) _____
Email _____

Licensee(s) is (check only one):
☐ Buyer Agent (all company licensees represent Buyer)
☐ Buyer Agent with Designated Agency (only Licensee(s) named above represent Buyer)
☐ Dual Agent (See Dual and/or Designated Agent box below)

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Buyer)

### SELLER'S RELATIONSHIP WITH PA LICENSED BROKER

☒ **No Business Relationship (Seller is not represented by a broker)**

Broker (Company) _____

Company License # _____
Company Address _____

Company Phone _____
Company Fax _____

Broker is (check only one):
☐ Seller Agent (Broker represents Seller only)
☐ Dual Agent (See Dual and/or Designated Agent box below)

Licensee(s) (Name) _____

State License # _____
Direct Phone(s) _____
Cell Phone(s) _____
Email _____

Licensee(s) is (check only one):
☐ Seller Agent (all company licensees represent Seller)
☐ Seller Agent with Designated Agency (only Licensee(s) named above represent Seller)
☐ Dual Agent (See Dual and/or Designated Agent box below)

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Seller)

### DUAL AND/OR DESIGNATED AGENCY

A Broker is a Dual Agent when a Broker represents both Buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents Buyer and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Buyer and Seller. If the same Licensee is designated for Buyer and Seller, the Licensee is a Dual Agent.

**By signing this Agreement, Buyer and Seller each acknowledge having been previously informed of, and consented to, dual agency, if applicable.**

Buyer Initials: _____ / _____

Seller Initials: NM /

Pennsylvania Association of Realtors'

ASR Page 1 of 13

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2017
rev. 6/17, rel. 7/17

DocuSign Envelope ID: FFD003E1-42A1-4B89-9E3E-0796FE0E66FB

1  1. **By this Agreement**, dated _____ ,
2  Seller hereby agrees to sell and convey to Buyer, who agrees to purchase, the Identified Property.
3  2. PURCHASE PRICE AND DEPOSITS (4-14)
4  (A) Purchase Price $ $125,000.00
5  ( One Hundred Twenty-Five Thousand
6
7  1. Initial Deposit, within _____ days (5 if not specified) of Execution Date.   U.S. Dollars, to be paid by Buyer as follows:
8  if not included in this Agreement:
9  2. Additional Deposit within __15__ days of the Execution Date:                    $ _____
10  3. _____                                        $ _____
11  Remaining balance will be paid at settlement.                                      $          1,000.00
12  (B) All funds paid by Buyer, including deposits, will be paid by check, cashier's check or wired funds. All funds paid by Buyer
13  within 30 days of settlement, including funds paid at settlement, will be by cashier's check or wired funds, but not by per-
14  sonal check.
15  (C) Deposits, regardless of the form of payment, will be paid in U.S. Dollars to Broker for Seller (unless otherwise stated here): Dawn
16  DiDonato- Burke, Esquire 100 Brandywine Blvd 302 Newtown PA 18940
17  who will retain deposits in an escrow account in conformity with all applicable laws and regulations until consummation or ter-
18  mination of this Agreement. Only real estate brokers are required to hold deposits in accordance with the rules and regulations of
19  the State Real Estate Commission. Checks tendered as deposit monies may be held uncashed pending the execution of this
20  Agreement.
21  3. SELLER ASSIST (If Applicable) (1-10)
22  Seller will pay $ _____ or _____ % of Purchase Price (0 if not specified) toward
23  Buyer's costs, as permitted by the mortgage lender, if any. Seller is only obligated to pay up to the amount or percentage which is
24  approved by mortgage lender.
25  4. SETTLEMENT AND POSSESSION (4-14)
26  (A) Settlement Date is                    November 7, 2017
27  (B) Settlement will occur in the county where the Property is located or in an adjacent county, during normal business hours, unless
28  Buyer and Seller agree otherwise.
29  (C) At time of settlement, the following will be pro-rated on a daily basis between Buyer and Seller, reimbursing where applicable:
30  current taxes; rents; interest on mortgage assumptions; condominium fees and homeowner association fees; water and/or sewer
31  fees, together with any other lienable municipal service fees. All charges will be prorated for the period(s) covered. Seller will pay
32  up to and including the date of settlement and Buyer will pay for all days following settlement, unless otherwise stated here:
33
34  (D) For purposes of prorating real estate taxes, the "periods covered" are as follows:
35  1. Municipal tax bills for all counties and municipalities in Pennsylvania are for the period from January 1 to December 31.
36  2. School tax bills for the Philadelphia, Pittsburgh and Scranton School Districts are for the period from January 1 to December 31.
37  School tax bills for all other school districts are for the period from July 1 to June 30.
38  (E) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here: _____
39
40  (F) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here: _____
41
42  (G) Possession is to be delivered by deed, existing keys and physical possession to a vacant Property free of debris, with all structures
43  broom-clean, at day and time of settlement, unless Seller, before signing this Agreement, has identified in writing that the Property
44  is subject to a lease.
45  (H) If Seller has identified in writing that the Property is subject to a lease, possession is to be delivered by deed, existing keys and
46  assignment of existing leases for the Property, together with security deposits and interest, if any, at day and time of settlement. Seller
47  will not enter into any new leases, nor extend existing leases, for the Property without the written consent of Buyer. Buyer will
48  acknowledge existing lease(s) by initialing the lease(s) at the execution of this Agreement, unless otherwise stated in this Agreement.
49  ☐ Tenant-Occupied Property Addendum (PAR Form TOP) is attached and made part of this Agreement.
50  5. DATES/TIME IS OF THE ESSENCE (1-10)
51  (A) Written acceptance of all parties will be on or before: _____
52  (B) The Settlement Date and all other dates and times identified for the performance of any obligations of this Agreement are of the
53  essence and are binding.
54  (C) The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of this Agreement by sign-
55  ing and/or initialing it. For purposes of this Agreement, the number of days will be counted from the Execution Date, excluding
56  the day this Agreement was executed and including the last day of the time period. All changes to this Agreement should be ini-
57  tialed and dated.
58  (D) The Settlement Date is not extended by any other provision of this Agreement and may only be extended by mutual written agree-
59  ment of the parties.
60  (E) Certain terms and time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed terms
61  and time periods are negotiable and may be changed by striking out the pre-printed text and inserting different terms acceptable
62  to all parties, except where restricted by law.

63  Buyer Initials: _____          ASR Page 2 of 13          Seller Initials: N M

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.ziplogix.com          Untitled

DocuSign Envelope ID: FFD003E1-42A1-4B89-9E3E-0796FE0E66FB

**6. ZONING (4-14)**

Failure of this Agreement to contain the zoning classification (except in cases where the property (and each parcel thereof, if subdividable) is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.
Zoning Classification, as set forth in the local zoning ordinance: _____

**7. FIXTURES AND PERSONAL PROPERTY (9-16)**

(A) INCLUDED in this sale, unless otherwise stated, are all existing items permanently installed in or on the Property, free of liens, and other items including plumbing; heating; gas fireplace logs; radiator covers; lighting fixtures (including chandeliers and ceiling fans); pools, spas and hot tubs (including covers and cleaning equipment); electric animal fencing systems (excluding collars); garage door openers and transmitters; television antennas; mounting brackets and hardware for television and sound equipment; unpotted shrubbery, plantings and trees; smoke detectors and carbon monoxide detectors; sump pumps; storage sheds; fences; mailboxes; wall to wall carpeting; existing window screens, storm windows and screen/storm doors; window covering hardware (including rods and brackets), shades and blinds; awnings; central vacuum system (with attachments); built-in air conditioners; built-in appliances; the range/oven; dishwashers; trash compactors; any remaining heating and cooking fuels stored on the Property at the time of settlement; and, if owned, water treatment systems, propane tanks, satellite dishes and security systems. Unless stated otherwise, the following items are included in the sale, but not in the Purchase Price: _____
_____
_____

(B) The following items are LEASED (not owned by Seller). Contact the provider/vendor for more information (e.g., water treatment systems, propane tanks, satellite dishes and security systems): _____

(C) EXCLUDED fixtures and items: _____
_____

**8. MORTGAGE CONTINGENCY (9-16)**

☒ WAIVED. This sale is NOT contingent on mortgage financing, although Buyer may obtain mortgage financing and/or the parties may include an appraisal contingency.

☐ ELECTED.

(A) This sale is contingent upon Buyer obtaining mortgage financing according to the following terms:

| First Mortgage on the Property | Second Mortgage on the Property |
|---|---|
| Loan Amount $ _____ | Loan Amount $ _____ |
| Minimum Term _____ years | Minimum Term _____ years |
| Type of mortgage _____ | Type of mortgage _____ |
| For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _____ % | For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _____ % |
| Mortgage lender _____ | Mortgage lender _____ |
| Interest rate _____ %; however, Buyer agrees to accept the interest rate as may be committed by the mortgage lender, not to exceed a maximum interest rate of _____ %. Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan | Interest rate _____ %; however, Buyer agrees to accept the interest rate as may be committed by the mortgage lender, not to exceed a maximum interest rate of _____ %. Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan. |

(B) Upon receiving documentation demonstrating lender's approval, whether conditional or outright, of Buyer's mortgage application(s) according to the terms set forth above, Buyer will promptly deliver a copy of the documentation to Seller, but in any case no later than

1. If Seller does not receive a copy of the documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s) by the date indicated above, Seller may terminate this Agreement by written notice to Buyer. Seller's right to terminate continues until Buyer delivers documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s) to Seller. Until Seller terminates this Agreement pursuant to this Paragraph, Buyer must continue to make a good faith effort to obtain mortgage financing.

2. Seller may terminate this Agreement by written notice to Buyer after the date indicated above if the documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s):
   a. Does not satisfy the terms of Paragraph 8(A), OR
   b. Contains any condition not specified in this Agreement (e.g., Buyer may settle on another property, an appraisal must be received by the lender, or the approval is not valid through the Settlement Date) that is not satisfied and/or removed in writing by the mortgage lender(s) within _____7_____ DAYS after the date indicated in Paragraph 8(B), or any extension thereof, other than those conditions that are customarily satisfied at or near settlement (e.g., obtaining insurance, confirming employment).

3. If this Agreement is terminated pursuant to Paragraphs 8(B)(1) or (2), or the mortgage loan(s) is not obtained for settlement, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 and this Agreement will be VOID. Buyer will be responsible for any costs incurred by Buyer for any inspections obtained according to the terms of this Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation, (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender(s).

Buyer Initials: _____    ASR Page 3 of 13    Seller Initials _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    Untitled

DocuSign Envelope ID: FFD003E1-42A1-4B89-9E3E-0796FE0E66FB

129 (C) The Loan-To-Value ratio (LTV) is used by lenders as one tool to help assess their potential risk of a mortgage loan. A particular
130     LTV may be necessary to qualify for certain loans, or buyers might be required to pay additional fees if the LTV exceeds a specific
131     level. The appraised value of the Property may be used by lenders to determine the maximum amount of a mortgage loan. The
132     appraised value is determined by an independent appraiser, subject to the mortgage lender's underwriter review, and may be higher
133     or lower than the Purchase Price and/or market price of the property.

134 (D) The interest rate(s) and fee(s) provisions in Paragraph 8(A) are satisfied if the mortgage lender(s) gives Buyer the right to guarantee
135     the interest rate(s) and fee(s) at or below the maximum levels stated. If lender(s) gives Buyer the right to lock in the interest rate(s),
136     Buyer will do so at least _____15_____ days before Settlement Date. Buyer gives Seller the right, at Seller's sole option and as permitted
137     by law and the mortgage lender(s), to contribute financially, without promise of reimbursement, to Buyer and/or the mortgage
138     lender(s) to make the above mortgage term(s) available to Buyer.

139 (E) Within _____7_____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will make a completed mortgage appli-
140     cation (including payment for and ordering of credit reports without delay) for the mortgage terms and to the mortgage lender(s)
141     identified in Paragraph 8(A), if any, otherwise to a responsible mortgage lender(s) of Buyer's choice. Broker for Buyer, if any,
142     otherwise Broker for Seller, is authorized to communicate with the mortgage lender(s) to assist in the mortgage loan process.
143     Broker for Seller, if any, is permitted to contact the mortgage lender(s) at any time to determine the status of the mortgage loan
144     application.

145 (F) Buyer will be in default of this Agreement If Buyer furnishes false information to anyone concerning Buyer's financial and/or
146     employment status, fails to cooperate in good faith with processing the mortgage loan application (including payment for and
147     ordering of appraisal without delay), fails to lock in interest rate(s) as stated in Paragraph 8(D), or otherwise causes the lender to
148     reject, or refuse to approve or issue, a mortgage loan commitment.

149 (G) If the mortgage lender(s), or a property and casualty insurer providing insurance required by the mortgage lender(s), requires
150     repairs to the Property, Buyer will, upon receiving the requirements, deliver a copy of the requirements to Seller. Within _____5_____
151     DAYS of receiving the copy of the requirements, Seller will notify Buyer whether Seller will make the required repairs at Seller's
152     expense.

153     1. If Seller makes the required repairs to the satisfaction of the mortgage lender and/or insurer, Buyer accepts the Property and
154        agrees to the RELEASE in Paragraph 28 of this Agreement.

155     2. If Seller will not make the required repairs, or if Seller fails to respond within the stated time, Buyer will, within _____5_____
156        DAYS, notify Seller of Buyer's choice to:
157        a. Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which will
158          not be unreasonably withheld, OR
159        b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
160          Paragraph 26 of this Agreement.

161     If Buyer fails to respond within the time stated in Paragraph 8(G)(2) or fails to terminate this Agreement by written notice to
162     Seller within that time, Buyer will accept the Property, make the required repairs/improvements at Buyer's expense and agree
163     to the RELEASE in Paragraph 28 of this Agreement.

164
> ### FHA/VA, IF APPLICABLE
>
> 165 (H) It is expressly agreed that notwithstanding any other provisions of this contract, Buyer will not be obligated to complete the pur-
> 166     chase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless Buyer
> 167     has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner,
> 168     Veterans Administration, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than
> 169     $ _____ (the Purchase Price as stated in this Agreement). Buyer will have the privilege and option of
> 170     proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation
> 171     is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does
> 172     not warrant the value nor the condition of the Property. Buyer should satisfy himself/herself that the price and condition of the
> 173     Property are acceptable.
>
> 174     **Warning:** Section 1010 of Title 18, U.S.C., Department of Housing and Urban Development and Federal Housing
> 175     Administration Transactions, provides, "Whoever for the purpose of . . . influencing in any way the action of such Department,
> 176     makes, passes, utters or publishes any statement, knowing the same to be false shall be fined under this title or imprisoned not
> 177     more than two years, or both."
>
> 178 (I) **U.S. Department of Housing and Urban Development (HUD) NOTICE TO PURCHASERS:** Buyer's Acknowledgement
> 179     ☒ Buyer has received the HUD Notice "For Your Protection: Get a Home Inspection." Buyer understands the importance of
> 180     getting an independent home inspection and has thought about this before signing this Agreement. Buyer understands that
> 181     FHA will not perform a home inspection nor guarantee the price or condition of the Property.
>
> 182 (J) **Certification** We the undersigned, Seller(s) and Buyer(s) party to this transaction each certify that the terms of this contract for
> 183     purchase are true to the best of our knowledge and belief, and that any other agreement entered into by any of these parties in
> 184     connection with this transaction is attached to this Agreement.

185 **9. CHANGE IN BUYER'S FINANCIAL STATUS (4-14)**
186     In the event of a change in Buyer's financial status affecting Buyer's ability to purchase, Buyer shall promptly notify Seller and
187     lender(s) to whom the Buyer submitted a mortgage application, if any, in writing. A change in financial status includes, but is not lim-
188     ited to, loss or a change in employment; failure or loss of sale of Buyer's home; Buyer's having incurred a new financial obligation,
189     entry of a judgment against Buyer. Buyer understands that applying for and/or incurring an additional financial obligation may
190     affect Buyer's ability to purchase.

191 Buyer Initials:  _____

Seller Initials: _____ / _____ Untitled

DocuSign Envelope ID FFD003E1-42A1-4B89-9E3E-0796FE0E66FB

192 **10. SELLER REPRESENTATIONS (4-14)**

193 (A) **Status of Water**
194 Seller represents that the Property is served by:
195 ☒ Public Water   ☐ Community Water   ☐ On-site Water   ☐ None   ☐ _____
196 (B) **Status of Sewer**
197 1. Seller represents that the Property is served by:
198 ☒ Public Sewer   ☐ Community Sewage Disposal System   ☐ Ten-Acre Permit Exemption (see Sewage Notice 2)
199 ☐ Individual On-lot Sewage Disposal System (see Sewage Notice 1)   ☐ Holding Tank (see Sewage Notice 3)
200 ☐ Individual On-lot Sewage Disposal System in Proximity to Well (see Sewage Notice 4, if applicable)
201 ☐ None (see Sewage Notice 1)   ☐ None Available/Permit Limitations in Effect (see Sewage Notice 5)
202 ☐

203 2. **Notices Pursuant to the Pennsylvania Sewage Facilities Act**
204 **Notice 1:** There is no currently existing community sewage system available for the subject property. Section 7 of the
205 Pennsylvania Sewage Facilities Act provides that no person shall install, construct, request bid proposals for construction, alter,
206 repair or occupy any building or structure for which an individual sewage system is to be installed, without first obtaining a
207 permit. Buyer is advised by this notice that, before signing this Agreement, Buyer should contact the local agency charged with
208 administering the Act to determine the procedure and requirements for obtaining a permit for an individual sewage system. The
209 local agency charged with administering the Act will be the municipality where the Property is located or that municipality
210 working cooperatively with others.
211 **Notice 2:** This Property is serviced by an individual sewage system installed under the ten-acre permit exemption provisions
212 **of Section 7 of the Pennsylvania Sewage Facilities Act.** (Section 7 provides that a permit may not be required before installing,
213 constructing, awarding a contract for construction, altering, repairing or connecting to an individual sewage system where a ten-acre
214 parcel or lot is subdivided from a parent tract after January 10, 1987). Buyer is advised that soils and site testing were not conducted
215 and that, should the system malfunction, the owner of the Property or properties serviced by the system at the time of a malfunction
216 may be held liable for any contamination, pollution, public health hazard or nuisance which occurs as a result.
217 **Notice 3:** This Property is serviced by a holding tank (permanent or temporary) to which sewage is conveyed by a water
218 **carrying system and which is designed and constructed to facilitate ultimate disposal of the sewage at another site.**
219 Pursuant to the Pennsylvania Sewage Facilities Act, Seller must provide a history of the annual cost of maintaining the tank
220 from the date of its installation or December 14, 1995, whichever is later.
221 **Notice 4:** An individual sewage system has been installed at an isolation distance from a well that is less than the dis-
222 **tance specified by regulation.** The regulations at 25 Pa. Code §73.13 pertaining to minimum horizontal isolation distances
223 provide guidance. Subsection (b) of §73.13 states that the minimum horizontal isolation distance between an individual water
224 supply or water supply system suction line and treatment tanks shall be 50 feet. Subsection (c) of §73.13 states that the hori-
225 zontal isolation distance between the individual water supply or water supply system suction line and the perimeter of the
226 absorption area shall be 100 feet.
227 **Notice 5:** This lot is within an area in which permit limitations are in effect and is subject to those limitations. Sewage facilities
228 are not available for this lot and construction of a structure to be served by sewage facilities may not begin until the municipality com-
229 pletes a major planning requirement pursuant to the Pennsylvania Sewage Facilities Act and regulations promulgated thereunder.

230 (C) **Historic Preservation**
231 Seller is not aware of historic preservation restrictions regarding the Property unless otherwise stated here: _____
232
233 (D) **Land Use Restrictions**
234 1. ☐ Property, or a portion of it, is subject to land use restrictions and may be preferentially assessed for tax purposes under the
235 following Act(s) (see Notices Regarding Land Use Restrictions below):
236 ☐ Agricultural Area Security Law (Right-to-Farm Act; Act 43 of 1981; 3 P.S. § 901 et seq.)
237 ☐ Farmland and Forest Land Assessment Act (Clean and Green Program; Act 319 of 1974; 72 P.S. § 5490.1 et seq.)
238 ☐ Open Space Act (Act 442 of 1967; 32 P.S. § 5001 et seq.)
239 ☐ Conservation Reserve Program (16 U.S.C. § 3831 et seq.)
240 ☐ Other
241 2. **Notices Regarding Land Use Restrictions**
242 a. **Pennsylvania Right-To-Farm Act:** The property you are buying maybe located in an area where agricultural operations
243 take place. Pennsylvania protects agricultural resources for the production of food and agricultural products. The law limits
244 circumstances where normal agricultural operations may be subject to nuisance lawsuits or restrictive ordinances.
245 b. **Clean and Green Program:** Properties enrolled in the Clean and Green Program receive preferential property tax assess-
246 ment. Buyer and Seller have been advised of the need to contact the County Tax Assessment Office before the execution
247 of this Agreement to determine the property tax implications that will or may result from the sale of the Property, or that
248 may result in the future as a result of any change in use of the Property or the land from which it is being separated.
249 c. **Open Space Act:** This Act enables counties to enter into covenants with owners of land designated as farm, forest, water
250 supply, or open space land on an adopted municipal, county or regional plan for the purpose of preserving the land as open
251 space. A covenant between the owner and county is binding upon any Buyer of the Property during the period of time that
252 the covenant is in effect (5 or 10 years). Covenants automatically renew at the end of the covenant period unless specific
253 termination notice procedures are followed. Buyer has been advised of the need to determine the restrictions that will apply
254 from the sale of the Property to Buyer and the property tax implications that will or may result from a change in use of the
255 Property, or any portion of it. Buyer is further advised to determine the term of any covenant now in effect.

256 Buyer Initials _____   ASR Page 5 of 13   Seller Initials _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   Untitled

DocuSign Envelope ID: FFD003E1-42A1-4B89-9E3E-0796FE0E66FB

d. **Conservation Reserve (Enhancement) Program:** Properties enrolled in the Conservation Reserve Program or CREP are environmentally-sensitive areas, the owners of which receive compensation in exchange for an agreement to maintain the land in its natural state. Contracts last from 10 to 15 years and carry penalties to Seller if terminated early by Buyer. Buyer has been advised of the need to determine the restrictions on development of the Property and the term of any contract now in effect. Seller is advised to determine the financial implications that will or may result from the sale of the Property.

(E) **Real Estate Seller Disclosure Law**

Generally, the Real Estate Seller Disclosure Law requires that before an agreement of sale is signed, the seller in a residential real estate transfer must make certain disclosures regarding the property to potential buyers in a form defined by the law. A residential real estate transfer is defined as a sale, exchange, installment sales contract, lease with an option to buy, grant or other transfer of an interest in real property where NOT LESS THAN ONE AND NOT MORE THAN FOUR RESIDENTIAL DWELLING UNITS are involved. Disclosures for condominiums and cooperatives are limited to the seller's particular unit(s). Disclosures regarding common areas or facilities are not required, as those elements are already addressed in the laws that govern the resale of condominium and cooperative interests.

(F) **Public and/or Private Assessments**

1. Seller represents that, as of the date Seller signed this Agreement, no public improvement, condominium or homeowner association assessments have been made against the Property which remain unpaid, and that no notice by any government or public authority (excluding assessed value) has been served upon Seller or anyone on Seller's behalf, including notices relating to violations of zoning, housing, building, safety or fire ordinances that remain uncorrected, and that Seller knows of no condition that would constitute a violation of any such ordinances that remain uncorrected, unless otherwise specified here: ____________
2. Seller knows of no other potential notices (including violations) and/or assessments except as follows: ____________

(G) **Highway Occupancy Permit**

Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.

**11. WAIVER OF CONTINGENCIES (9-05)**

If this Agreement is contingent on Buyer's right to inspect and/or repair the Property, or to verify insurability, environmental conditions, boundaries, certifications, zoning classification or use, or any other information regarding the Property, **Buyer's failure to exercise any of Buyer's options within the times set forth in this agreement is a Waiver of that contingency and Buyer accepts the Property and agrees to the release in Paragraph 28 of this agreement.**

**12. BUYER'S DUE DILIGENCE/INSPECTIONS (9-16)**

(A) **Rights and Responsibilities**

1. Seller will provide access to insurers' representatives and, as may be required by this Agreement or by mortgage lender(s), to surveyors, municipal officials, appraisers and inspectors. All parties and their real estate licensee(s) may attend any inspections.
2. Buyer may make two pre-settlement walk-through inspections of the Property. Buyer's right to these inspections is not waived by any other provision of this Agreement.
3. **Seller will have heating and all utilities (including fuel(s)) on for all inspections/appraisals.**
4. All inspectors, including home inspectors, are authorized by Buyer to provide a copy of any inspection Report to Broker for Buyer.
5. Seller has the right, upon request, to receive a free copy of any inspection Report from the party for whom it was prepared. Unless otherwise stated, Seller does not have the right to receive a copy of any lender's appraisal report.

(B) Buyer waives or elects at Buyer's expense to have the following inspections, certifications, and investigations (referred to as "Inspection" or "Inspections") performed by professional contractors, home inspectors, engineers, architects and other properly licensed or otherwise qualified professionals. All inspections shall be non-invasive, unless otherwise agreed in writing. If the same inspector is inspecting more than one system, the inspector must comply with the Home Inspection Law. (See Paragraph 12(D) for Notices Regarding Property and Environmental Inspections)

(C) For elected Inspection(s), Buyer will, within the Contingency Period stated in Paragraph 13(A), complete Inspections, obtain any Inspection Reports or results (referred to as "Report" or "Reports"), and accept the Property, terminate this Agreement, or submit a written corrective proposal to Seller, according to the terms of Paragraph 13(B).

**Home/Property Inspections and Environmental Hazards (mold, etc.)**

Elected ____/____ — Waived ____/____

Buyer may conduct an inspection of the Property's structural components; roof; exterior windows and exterior doors; exterior building material, fascia, gutters and downspouts; swimming pools, hot tubs and spas; appliances; electrical systems; interior and exterior plumbing; public sewer systems; heating and cooling systems; water penetration; electromagnetic fields; wetlands and flood plain delineation; structure square footage; mold and other environmental hazards (e.g., fungi, indoor air quality, asbestos, underground storage tanks, etc.); and any other items Buyer may select. If Buyer elects to have a home inspection of the Property, as defined in the Home Inspection Law, the home inspection must be performed by a full member in good standing of a national home inspection association, or a person supervised by a full member of a national home inspection association, in accordance with the ethical standards and code of conduct or practice of that association, or by a properly licensed or registered engineer or architect. (See Notices Regarding Property & Environmental Inspections)

**Wood Infestation**

Elected ____/____ — Waived ____/____

Buyer may obtain a written "Wood-Destroying Insect Infestation Inspection Report" from an inspector certified as a wood-destroying pests pesticide applicator and will deliver it and all supporting documents and drawings provided by the inspector to Seller. The Report is to be made satisfactory to and in compliance with applicable laws, mortgage lender requirements, and/or Federal Insuring and Guaranteeing Agency requirements. The Inspection is to be limited to all readily-visible and accessible areas of all structures on the Property, except fences. If the Inspection reveals

322 active infestation(s), Buyer, at Buyer's expense, may obtain a Proposal from a wood-destroying pests pesticide appli-
323 cator to treat the Property. If the Inspection reveals damage from active or previous infestation(s), Buyer may obtain
324 a written Report from a professional contractor, home inspector or structural engineer that is limited to structural
325 damage to the Property caused by wood-destroying organisms and a Proposal to repair the Property.
326 **Deeds, Restrictions and Zoning**

327 *Elected*     Buyer may investigate easements, deed and use restrictions (including any historic preservation restrictions or ordi-     Waived
328 nances) that apply to the Property and review local zoning ordinances. Buyer may verify that the present use of the    ___ / ____
329 Property (such as in-law quarters, apartments, home office, day care, commercial or recreational vehicle parking) is
330 permitted and may elect to make the Agreement contingent upon an anticipated use. Present use: _____
331 

332 **Water Service**
333 *Elected*     Buyer may obtain an Inspection of the quality and quantity of the water system from a properly licensed or otherwise    Waived
334 qualified water/well testing company. If and as required by the inspection company, Seller, at Seller's expense, will    ___ / ____
335 locate and provide access to the on-site (or individual) water system. Seller will restore the Property to its previous
336 condition, at Seller's expense, prior to settlement.
337 **Radon**
338 *Elected*     Buyer may obtain a radon test of the Property from a certified inspector. The U.S. Environmental Protection Agency    Waived
339 (EPA) advises corrective action if the average annual exposure to radon is equal to or higher than 0.02 working levels    ___ / ____
340 or 4 picoCuries/liter (4pCi/L). Radon is a natural, radioactive gas that is produced in the ground by the normal decay
341 of uranium and radium. Studies indicate that extended exposure to high levels of radon gas can increase the risk of
342 lung cancer. Radon can find its way into any air-space and can permeate a structure. If a house has a radon problem,
343 it usually can be cured by increased ventilation and/or by preventing radon entry. Any person who tests, mitigates
344 or safeguards a building for radon in Pennsylvania must be certified by the Department of Environmental Protection.
345 Information about radon and about certified testing or mitigation firms is available through Department of
346 Environmental Protection, Bureau of Radiation Protection, 13th Floor, Rachel Carson State Office Building, P.O.
347 Box 8469, Harrisburg, PA 17105-8469, (800) 23RADON or (717) 783-3594. www.epa.gov
348 **On-lot Sewage (If Applicable)**
349 *Elected*     Buyer may obtain an Inspection of the individual on-lot sewage disposal system from a qualified, professional    Waived
350 inspector. If and as required by the inspection company, Seller, at Seller's expense, will locate, provide access to, and    ___ / ____
351 empty the individual on-lot sewage disposal system. Seller will restore the Property to its previous condition, at
352 Seller's expense, prior to settlement. See Paragraph 13(C) for more information regarding the Individual On-lot
353 Sewage Inspection Contingency.
354 **Property and Flood Insurance**
355 *Elected*     Buyer may determine the insurability of the Property by making application for property and casualty insurance for    Waived
356 the Property to a responsible insurer. Broker for Buyer, if any, otherwise Broker for Seller, may communicate with the    ___ / ____
357 insurer to assist in the insurance process. If the Property is located in a specially-designated flood zone, Buyer may
358 be required to carry flood insurance at Buyer's expense, which may need to be ordered 14 days or more prior to
359 Settlement Date. Revised flood maps and changes to Federal law may substantially increase future flood insurance
360 premiums or require insurance for formerly exempt properties. Buyer should consult with one or more flood insur-
361 ance agents regarding the need for flood insurance and possible premium increases.
362 **Property Boundaries**
363 *Elected*     Buyer may engage the services of a surveyor, title abstractor, or other qualified professional to assess the legal    Waived
364 description, certainty and location of boundaries and/or quantum of land. Most sellers have not had the Property sur-    ___ / ____
365 veyed as it is not a requirement of property transfer in Pennsylvania. Any fences, hedges, walls and other natural or
366 constructed barriers may or may not represent the true boundary lines of the Property. Any numerical representations
367 of size of property are approximations only and may be inaccurate.
368 **Lead-Based Paint Hazards (For Properties built prior to 1978 only)**
369 *Elected*     Before Buyer is obligated to purchase a residential dwelling built prior to 1978, Buyer has the option to conduct a    Waived
370 risk assessment and/or inspection of the Property for the presence of lead-based paint and/or lead-based paint haz-    ___ / ____
371 ards. Regardless of whether this inspection is elected or waived, the Residential Lead-Based Paint Hazard
372 Reduction Act requires a seller of property built prior to 1978 to provide the Buyer with an EPA-approved
373 lead hazards information pamphlet titled "Protect Your Family from Lead in Your Home," along with a sep-
374 arate form, attached to this Agreement, disclosing Seller's knowledge of lead-based paint hazards and any
375 lead-based paint records regarding the Property.
376 **Other**
377 *Elected*    Mold and airborne toxins                                Waived
378 _____    ___ / ____
379 _____

380 The Inspections elected above do not apply to the following existing conditions and/or items: _____
381 _____
382 _____

383 **(D) Notices Regarding Property & Environmental Inspections**
384     1. **Exterior Building Materials:** Poor or improper installation of exterior building materials may result in moisture penetrating
385 the surface of a structure where it may cause mold and damage to the building's frame.

386 Buyer Initials: _____

DocuSign Envelope ID: FFD003E1-42A1-4B89-9E3E-0796FE0E66FB

2. **Asbestos:** Asbestos is linked with several adverse health effects, including various forms of cancer.

3. **Environmental Hazards:** The U.S. Environmental Protection Agency has a list of hazardous substances, the use and disposal of which are restricted by law. Generally, if hazardous substances are found on a property, it is the property owner's responsibility to dispose of them properly.

4. **Wetlands:** Wetlands are protected by the federal and state governments. Buyer may wish to hire an environmental engineer to investigate whether the Property is located in a wetlands area to determine if permits for plans to build, improve or develop the property would be affected or denied because of its location in a wetlands area.

5. **Mold, Fungi and Indoor Air Quality:** Indoor mold contamination and the inhalation of bioaerosols (bacteria, mold spores, pollen and viruses) have been associated with allergic responses.

6. **Additional Information:** Inquiries or requests for more information about asbestos and other hazardous substances can be directed to the U.S. Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Ave., N.W., Washington, D.C. 20460, (202) 272-0167, and/or the Department of Health, Commonwealth of Pennsylvania, Division of Environmental Health, Harrisburg, PA 17120. Information about indoor air quality issues is available through the Pennsylvania Department of Health and may be obtained by contacting Health & Welfare Building, 8th Floor West, 625 Forster St., Harrisburg, PA 17120, or by calling 1-877-724-3258.

## 13. INSPECTION CONTINGENCY (4-14)

(A) The Contingency Period is _____ days (10 if not specified) from the Execution Date of this Agreement for each Inspection elected in Paragraph 12(C).

(B) Except as stated in Paragraph 13(C), if the result of any Inspection elected in Paragraph 12(C) is unsatisfactory to Buyer, Buyer will, within the stated Contingency Period:

1. Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this Agreement, OR

2. **Terminate this Agreement** by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement, OR

3. **Present the Report(s) to Seller with a Written Corrective Proposal ("Proposal")** listing corrections and/or credits desired by Buyer. The Proposal may, but is not required to, include the name(s) of a properly licensed or qualified professional(s) to perform the corrections requested in the Proposal, provisions for payment, including retests, and a projected date for completion of the corrections. Buyer agrees that Seller will not be held liable for corrections that do not comply with mortgage lender or governmental requirements if performed in a workmanlike manner according to the terms of Buyer's Proposal.

   a. Following the end of the Contingency Period, Buyer and Seller will have _____ days (5 if not specified) for a Negotiation Period.

      (1) During the Negotiation Period, Seller will either agree to satisfy all the terms of Buyer's Proposal or negotiate, by written or verbal communication, another mutually acceptable written agreement, providing for any repairs or improvements to the Property and/or any credit to Buyer at settlement, as acceptable to the mortgage lender, if any.

      (2) If Seller agrees to satisfy all the terms of Buyer's Proposal, or Buyer and Seller enter into another mutually acceptable written agreement, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement and the Negotiation Period ends.

   b. If no mutually acceptable written agreement is reached, or if Seller fails to respond, during the Negotiation Period, within _____ days (2 if not specified) following the end of the Negotiation Period, Buyer will:

      (1) Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this Agreement, OR

      (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

   If Buyer and Seller do not reach a mutually acceptable written agreement, and Buyer does not terminate this Agreement by written notice to Seller within the time allotted in Paragraph 13(B)(3)(b), Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement. Ongoing negotiations do not automatically extend the Negotiation Period.

(C) If a Report reveals the need to expand or replace the existing individual on-lot sewage disposal system, Seller may, within _____ days (25 if not specified) of receiving the Report, submit a Proposal to Buyer. The Proposal will include, but not be limited to, the name of the company to perform the expansion or replacement; provisions for payment, including retests; and a projected completion date for corrective measures. Within _____5_____ DAYS of receiving Seller's Proposal, or if no Proposal is provided within the stated time, Buyer will notify Seller in writing of Buyer's choice to:

1. Agree to the terms of the Proposal, accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR

2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement, OR

3. Accept the Property and the existing system and agree to the RELEASE in Paragraph 28 of this Agreement. If required by any mortgage lender and/or any governmental authority, Buyer will correct the defects before settlement or within the time required by the mortgage lender and/or governmental authority, at Buyer's sole expense, with permission and access to the Property given by Seller, which may not be unreasonably withheld. If Seller denies Buyer permission and/or access to correct the defects, Buyer may, within _____5_____ DAYS of Seller's denial, terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

   If Buyer fails to respond within the time stated in Paragraph 13(C) or fails to terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement.

## 14. REAL ESTATE TAXES AND ASSESSED VALUE (4-14)

In Pennsylvania, taxing authorities (school districts and municipalities) and property owners may appeal the assessed value of a prop-

Buyer Initials: _____   ASR Page 8 of 13   Seller Initials: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

452 erty at the time of sale, or at any time thereafter. A successful appeal by a taxing authority may result in a higher assessed value for the
453 property and an increase in property taxes. Also, periodic county-wide property reassessments may change the assessed value of the
454 property and result in a change in property tax.
455 **15. NOTICES, ASSESSMENTS AND MUNICIPAL REQUIREMENTS (4-14)**
456 (A) In the event any notices of public and/or private assessments as described in Paragraph 10(F) (excluding assessed value) are
457 received after Seller has signed this Agreement and before settlement, Seller will within _____ 5 _____ DAYS of receiving the notices and/or
458 assessments provide a copy of the notices and/or assessments to Buyer and will notify Buyer in writing that Seller will:
459 1. Fully comply with the notices and/or assessments, at Seller's expense, before settlement. If Seller fully complies with the
460 notices and/or assessments, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement.
461 2. Not comply with the notices and/or assessments. If Seller chooses not to comply with the notices and/or assessments, or fails
462 within the stated time to notify Buyer whether Seller will comply, Buyer will notify Seller in writing within _____ 5 _____ DAYS
463 that Buyer will:
464 a. Comply with the notices and/or assessments at Buyer's expense, accept the Property, and agree to the RELEASE in
465 Paragraph 28 of this Agreement, OR
466 b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
467 Paragraph 26 of this Agreement.
468 If Buyer fails to respond within the time stated in Paragraph 15(A)(2) or fails to terminate this Agreement by written notice to
469 Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement.
470 (B) If required by law, within _____ 30 _____ DAYS from the Execution Date of this Agreement, but in no case later than _____ 15 _____ DAYS prior to
471 Settlement Date, Seller will order at Seller's expense a certification from the appropriate municipal department(s) disclosing notice
472 of any uncorrected violations of zoning, housing, building, safety or fire ordinances and/or a certificate permitting occupancy of the
473 Property. If Buyer receives a notice of any required repairs/improvements, Buyer will promptly deliver a copy of the notice to Seller.
474 1. Within _____ 5 _____ DAYS of receiving notice from the municipality that repairs/improvements are required, Seller will deliver a copy
475 of the notice to Buyer and notify Buyer in writing that Seller will:
476 a. Make the required repairs/improvements to the satisfaction of the municipality. If Seller makes the required repairs/improve-
477 ments, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR
478 b. Not make the required repairs/improvements. If Seller chooses not to make the required repairs/improvements, Buyer will
479 notify Seller in writing within _____ 5 _____ DAYS that Buyer will:
480 (1) Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which
481 will not be unreasonably withheld, OR
482 (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms
483 of Paragraph 26 of this Agreement.
484 If Buyer fails to respond within the time stated in Paragraph 15(B)(1)(b) or fails to terminate this Agreement by written
485 notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this
486 Agreement, and Buyer accepts the responsibility to perform the repairs/improvements according to the terms of the
487 notice provided by the municipality.
488 2. If Seller denies Buyer permission to make the required repairs/improvements, or does not provide Buyer access before
489 Settlement Date to make the required repairs/improvements, Buyer may, within _____ 5 _____ DAYS, terminate this Agreement by writ-
490 ten notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.
491 3. If repairs/improvements are required and Seller fails to provide a copy of the notice to Buyer as required in this Paragraph, Seller
492 will perform all repairs/improvements as required by the notice at Seller's expense. Paragraph 15(B)(3) will survive settlement.
493 **16. CONDOMINIUM/PLANNED COMMUNITY (HOMEOWNER ASSOCIATIONS) NOTICE (9-16)**
494 (A) Property is NOT a Condominium or part of a Planned Community unless checked below.
495 ☐ CONDOMINIUM. The Property is a unit of a condominium that is primarily run by a unit owners' association. Section 3407 of
496 the Uniform Condominium Act of Pennsylvania requires Seller to furnish Buyer with a Certificate of Resale and copies of the
497 condominium declaration (other than plats and plans), the bylaws and the rules and regulations of the association.
498 ☐ PLANNED COMMUNITY (HOMEOWNER ASSOCIATION). The Property is part of a planned community as defined by
499 the Uniform Planned Community Act. Section 5407(a) of the Act requires Seller to furnish Buyer with a copy of the declaration
500 (other than plats and plans), the bylaws, the rules and regulations of the association, and a Certificate containing the provisions
501 set forth in Section 5407(a) of the Act.
502 (B) **THE FOLLOWING APPLIES TO INITIAL SALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A**
503 **PLANNED COMMUNITY:**
504 If this is the first sale of the property after creation of the condominium or planned community (therefore a sale by the Declarant),
505 Seller shall furnish Buyer with a Public Offering Statement no later than the date Buyer executes this Agreement. Buyer may void
506 this Agreement within 15 days (if a condominium) or within 7 days (if part of a planned community) after receipt of the Public
507 Offering Statement or any amendment to the Statement that materially and adversely affects Buyer. Upon Buyer declaring this
508 Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this Agreement.
509 (C) **THE FOLLOWING APPLIES TO RESALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A PLANNED**
510 **COMMUNITY:**
511 1. Within _____ 15 _____ DAYS from the Execution Date of this Agreement, Seller, at Seller's expense, will request from the association
512 a Certificate of Resale and any other documents necessary to enable Seller to comply with the relevant Act. The Act provides
513 that the association is required to provide these documents within 10 days of Seller's request.
514 2. Seller will promptly deliver to Buyer all documents received from the association. Under the Act, Seller is not liable to Buyer

515 Buyer Initials: _____    ASR Page 9 of 13    Seller Initials: _____

516  for the failure of the association to provide the Certificate in a timely manner or for any incorrect information provided by the
517  association in the Certificate.
518     3.  The Act provides that Buyer may declare this Agreement VOID at any time before Buyer receives the association documents and for
519  5 days after receipt, OR until settlement, whichever occurs first. Buyer s notice to Seller must be in writing; upon Buyer declaring this
520  Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this Agreement.
521     4.  If the association has the right to buy the Property (right of first refusal), and the association exercises that right, Seller will
522  reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of the
523  Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for
524  cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3)
525  Appraisal fees and charges paid in advance to mortgage lender.

526  **17. TITLES, SURVEYS AND COSTS (4-14)**
527    (A)  The Property will be conveyed with good and marketable title that is insurable by a reputable title insurance company at the regular
528  rates, free and clear of all liens, encumbrances, and easements, excepting however the following: existing deed restrictions; his-
529  toric preservation restrictions or ordinances; building restrictions, ordinances, easements of roads; easements visible upon the
530  ground, easements of record; and privileges or rights of public service companies, if any.
531    (B)  Buyer is encouraged to obtain an owner's title insurance policy to protect Buyer. An owner's title insurance policy is different from
532  a lender's title insurance policy, which will not protect Buyer from claims and attacks on the title. Owner's title insurance policies
533  come in standard and enhanced versions. Buyer should consult with a title insurance agent about Buyer's options. Buyer
534  agrees to release and discharge any and all claims and losses against Broker for should Buyer neglect to obtain an owner's
535  title insurance policy.
536    (C)  Buyer will pay for the following: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation;
537  (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees
538  and charges paid in advance to mortgage lender; (4) Buyer's customary settlement costs and accruals.
539    (D)  Seller has the right, upon request, to receive a free copy of any title abstract for the Property from the party for whom it was prepared.
540    (E)  Any survey or surveys required by the title insurance company or the abstracting company for preparing an adequate legal descrip-
541  tion of the Property (or the correction thereof) will be obtained and paid for by Seller. Any survey or surveys desired by Buyer or
542  required by the mortgage lender will be obtained and paid for by Buyer.
543    (F)  In the event of a change in Seller's financial status affecting Seller's ability to convey title to the Property on or before the
544  Settlement Date, or any extension thereof, Seller shall promptly notify Buyer in writing. A change in financial status includes, but
545  is not limited to, Seller filing bankruptcy; filing of a foreclosure lawsuit against the Property; entry of a monetary judgment against
546  Seller; notice of public tax sale affecting the Property; and Seller learning that the sale price of the Property is no longer sufficient
547  to satisfy all liens and encumbrances against the Property.
548    (G)  If Seller is unable to give good and marketable title that is insurable by a reputable title insurance company at the regular rates, as
549  specified in Paragraph 17(A), Buyer may terminate this Agreement by written notice to Seller, with all deposit monies returned to
550  Buyer according to the terms of Paragraph 26 of this Agreement. Upon termination, Seller will reimburse Buyer for any costs incurred
551  by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and for those items specified in
552  Paragraph 17(C) items (1), (2), (3) and in Paragraph 17(E).
553    (H)  Oil, gas, mineral, or other rights of this Property may have been previously conveyed or leased, and Sellers make no representation
554  about the status of those rights unless indicated elsewhere in this Agreement.
555     ☐ Oil, Gas and Mineral Rights Addendum (PAR Form OGM) is attached to and made part of this Agreement.
556    (I)   COAL NOTICE (Where Applicable)
557  THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDERNEATH
558  THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL
559  RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE,
560  BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of the Act of July
561  17, 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence resulting from
562  coal mining operations, and that the property described herein may be protected from damage due to mine subsidence by a private
563  contract with the owners of the economic interests in the coal. This acknowledgement is made for the purpose of complying with
564  the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27, 1966." Buyer agrees
565  to sign the deed from Seller which deed will contain the aforesaid provision.
566    (J)   The Property is not a "recreational cabin" as defined in the Pennsylvania Construction Code Act unless otherwise stated here:
567  _____
568    (K)  1. This property is not subject to a Private Transfer Fee Obligation unless otherwise stated here:
569     ☐ Private Transfer Fee Addendum (PAR Form PTF) is attached to and made part of this Agreement.
570  2. Notices Regarding Private Transfer Fees: In Pennsylvania, Private Transfer Fees are defined and regulated in the Private Transfer Fee
571  Obligation Act (Act 1 of 2011, 68 Pa.C.S. §§ 8101, et. seq.), which defines a Private Transfer Fee as "a fee that is payable upon the trans-
572  fer of an interest in real property, or payable for the right to make or accept the transfer, if the obligation to pay the fee or charge runs
573  with title to the property or otherwise binds subsequent owners of property, regardless of whether the fee or charge is a fixed amount or
574  is determined as a percentage of the value of the property, the purchase price or other consideration given for the transfer." A Private
575  Transfer Fee must be properly recorded to be binding, and sellers must disclose the existence of the fees to prospective buyers. Where
576  a Private Transfer Fee is not properly recorded or disclosed, the Act gives certain rights and protections to buyers.

577  **18. MAINTENANCE AND RISK OF LOSS (1-14)**
578    (A)  Seller will maintain the Property (including, but not limited to, structures, grounds, fixtures, appliances, and personal property)
579  specifically listed in this Agreement in its present condition, normal wear and tear excepted.

580  Buyer Initials 

Seller Initials

Untitled

DocuSign Envelope ID: FFD003E1-42A1-4B89-9E3E-0796FE0E66FB

581    (B) If any part of the Property included in the sale fails before settlement, Seller will:
582        1. Repair or replace that part of the Property before settlement, OR
583        2. Provide prompt written notice to Buyer of Seller's decision to:
584            a. Credit Buyer at settlement for the fair market value of the failed part of the Property, as acceptable to the mortgage lender,
585               if any, OR
586            b. Not repair or replace the failed part of the Property, and not credit Buyer at settlement for the fair market value of the failed
587               part of the Property.
588        3. If Seller does not repair or replace the failed part of the Property or agree to credit Buyer for its fair market value, or if Seller
589           fails to notify Buyer of Seller's choice, Buyer will notify Seller in writing within _____5_____ DAYS or before Settlement Date,
590           whichever is earlier, that Buyer will:
591            a. Accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
592            b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
593               Paragraph 26 of this Agreement.
594           If Buyer fails to respond within the time stated in Paragraph 18(B)(3) or fails to terminate this Agreement by written notice
595           to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement.
596    (C) Seller bears the risk of loss from fire or other casualties until settlement. If any property included in this sale is destroyed and not
597        replaced prior to settlement, Buyer will:
598        1. Accept the Property in its then current condition together with the proceeds of any insurance recovery obtainable by Seller, OR
599        2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
600           Paragraph 26 of this Agreement.

601 **19. HOME WARRANTIES (1-10)**
602    At or before settlement, either party may purchase a home warranty for the Property from a third-party vendor. Buyer and Seller under-
603    stand that a home warranty for the Property does not alter any disclosure requirements of Seller, will not cover or warrant any pre-
604    existing defects of the Property, and will not alter, waive or extend any provisions of this Agreement regarding inspections or certifi-
605    cations that Buyer has elected or waived as part of this Agreement. Buyer and Seller understand that a broker who recommends a home
606    warranty may have a business relationship with the home warranty company that provides a financial benefit to the broker.

607 **20. RECORDING (9-05)**
608    This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public record. If Buyer
609    causes or permits this Agreement to be recorded, Seller may elect to treat such act as a default of this Agreement.

610 **21. ASSIGNMENT (1-10)**
611    This Agreement is binding upon the parties, their heirs, personal representatives, guardians and successors, and to the extent assignable,
612    on the assigns of the parties hereto. Buyer will not transfer or assign this Agreement without the written consent of Seller unless oth-
613    erwise stated in this Agreement. Assignment of this Agreement may result in additional transfer taxes.

614 **22. GOVERNING LAW, VENUE AND PERSONAL JURISDICTION (9-05)**
615    (A) The validity and construction of this Agreement, and the rights and duties of the parties, will be governed in accordance with the
616        laws of the Commonwealth of Pennsylvania.
617    (B) The parties agree that any dispute, controversy or claim arising under or in connection with this Agreement or its performance by either
618        party submitted to a court shall be filed exclusively by and in the state or federal courts sitting in the Commonwealth of Pennsylvania.

619 **23. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 (FIRPTA) (1-17)**
620    The disposition of a U.S. real property interest by a foreign person (the transferor) is subject to the Foreign Investment in Real Property
621    Tax Act of 1980 (FIRPTA) income tax withholding. FIRPTA authorized the United States to tax foreign persons on dispositions of U.S.
622    real property interests. This includes but is not limited to a sale or exchange, liquidation, redemption, gift, transfers, etc. Persons pur-
623    chasing U.S. real property interests (transferee) from foreign persons, certain purchasers' agents, and settlement officers are required
624    to withhold up to 15 percent of the amount realized (special rules for foreign corporations). Withholding is intended to ensure U.S. tax-
625    ation of gains realized on disposition of such interests. The transferee/Buyer is the withholding agent. If you are the transferee/Buyer
626    you must find out if the transferor is a foreign person as defined by the Act. If the transferor is a foreign person and you fail to withhold,
627    you may be held liable for the tax.

628 **24. NOTICE REGARDING CONVICTED SEX OFFENDERS (MEGAN'S LAW) (4-14)**
629    The Pennsylvania General Assembly has passed legislation (often referred to as "Megan's Law," 42 Pa.C.S. § 9791 et seq.) providing
630    for community notification of the presence of certain convicted sex offenders. Buyers are encouraged to contact the municipal
631    police department or the Pennsylvania State Police for information relating to the presence of sex offenders near a particular prop-
632    erty, or to check the information on the Pennsylvania State Police Web site at www.pamegaslaw.state.pa.us.

633 **25. REPRESENTATIONS (1-10)**
634    (A) All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their
635        licensees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this
636        Agreement. This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations,
637        covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This
638        Agreement will not be altered, amended, changed or modified except in writing executed by the parties.
639    (B) Unless otherwise stated in this Agreement, Buyer has inspected the Property (including fixtures and any personal property
640        specifically listed herein) before signing this Agreement or has waived the right to do so, and agrees to purchase the Property
641        IN ITS PRESENT CONDITION, subject to inspection contingencies elected in this Agreement. Buyer acknowledges that
642        Brokers, their licensees, employees, officers or partners have not made an independent examination or determination of the struc-
643        tural soundness of the Property, the age or condition of the components, environmental conditions, the permitted uses, nor of con-
644        ditions existing in the locale where the Property is situated; nor have they made a mechanical inspection of any of the systems con-
645        tained therein.

646 Buyer Initials:  _____

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

Seller Initials: _____

Untitled

DocuSign Envelope ID: FFD003E1-42A1-4B89-9E3E-0796FE0E66FB

647     (C) Any repairs required by this Agreement will be completed in a workmanlike manner.

648     (D) Broker(s) have provided or may provide services to assist unrepresented parties in complying with this Agreement.

649 **26. DEFAULT, TERMINATION AND RETURN OF DEPOSITS (4-14)**

650     (A) Where Buyer terminates this Agreement pursuant to any right granted by this Agreement, Buyer will be entitled to a return of all
651        deposit monies paid on account of Purchase Price pursuant to the terms of Paragraph 26(B), and this Agreement will be VOID.
652        Termination of this Agreement may occur for other reasons giving rise to claims by Buyer and/or Seller for the deposit monies.

653     (B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to
654        determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:

655        1. If this Agreement is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written
656           agreement signed by both parties is evidence that there is no dispute regarding deposit monies.

657        2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing
658           Broker how to distribute some or all of the deposit monies.

659        3. According to the terms of a final order of court.

660        4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the
661           deposit monies if there is a dispute between the parties that is not resolved. (See Paragraph 26(C))

662     (C) Buyer and Seller agree that if there is a dispute over the entitlement to deposit monies that is unresolved _____ days (180 if not
663        specified) after the Settlement Date stated in Paragraph 4(A) (or any written extensions thereof) or following termination of the
664        Agreement, whichever is earlier, then the Broker holding the deposit monies will, within 30 days of receipt of Buyer's written
665        request, distribute the deposit monies to Buyer unless the Broker is in receipt of verifiable written notice that the dispute is the sub-
666        ject of litigation or mediation. If Broker has received verifiable written notice of litigation prior to the receipt of Buyer's request for
667        distribution, Broker will continue to hold the deposit monies until receipt of a written distribution agreement between Buyer and
668        Seller or a final court order. Buyer and Seller are advised to initiate litigation for any portion of the deposit monies prior to any dis-
669        tribution made by Broker pursuant to this paragraph. Buyer and Seller agree that the distribution of deposit monies based upon the
670        passage of time does not legally determine entitlement to deposit monies, and that the parties maintain their legal rights to pursue
671        litigation even after a distribution is made.

672     (D) Buyer and Seller agree that a Broker who holds or distributes deposit monies pursuant to the terms of Paragraph 26 or Pennsylvania
673        law will not be liable. Buyer and Seller agree that if any Broker or affiliated licensee is named in litigation regarding deposit
674        monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by the party naming
675        them in litigation.

676     (E) Seller has the option of retaining all sums paid by Buyer, including the deposit monies, should Buyer:

677        1. Fail to make any additional payments as specified in Paragraph 2, OR

678        2. Furnish false or incomplete information to Seller, Broker(s), or any other party identified in this Agreement concerning Buyer's
679           legal or financial status, OR

680        3. Violate or fail to fulfill and perform any other terms or conditions of this Agreement.

681     (F) Unless otherwise checked in Paragraph 26(G), Seller may elect to retain those sums paid by Buyer, including deposit monies:

682        1. On account of purchase price, OR

683        2. As monies to be applied to Seller's damages, OR

684        3. As liquidated damages for such default.

685     (G) ☐ SELLER IS LIMITED TO RETAINING SUMS PAID BY BUYER, INCLUDING DEPOSIT MONIES, AS LIQUIDATED
686        DAMAGES.

687     (H) If Seller retains all sums paid by Buyer, including deposit monies, as liquidated damages pursuant to Paragraph 26(F) or (G), Buyer
688        and Seller are released from further liability or obligation and this Agreement is VOID.

689     (I) Brokers and licensees are not responsible for unpaid deposits.

690 **27. MEDIATION (1-10)**

691 Buyer and Seller will submit all disputes or claims that arise from this Agreement, including disputes and claims over deposit monies,
692 to mediation. Mediation will be conducted in accordance with the Rules and Procedures of the Home Sellers/Home Buyers Dispute
693 Resolution System, unless it is not available, in which case Buyer and Seller will mediate according to the terms of the mediation sys-
694 tem offered or endorsed by the local Association of Realtors®. Mediation fees, contained in the mediator's fee schedule, will be divided
695 equally among the parties and will be paid before the mediation conference. This mediation process must be concluded before any party
696 to the dispute may initiate legal proceedings in any courtroom, with the exception of filing a summons if it is necessary to stop any
697 statute of limitations from expiring. Any agreement reached through mediation and signed by the parties will be binding. Any agree-
698 ment to mediate disputes or claims arising from this Agreement will survive settlement.

699 **28. RELEASE (9-05)**

700 Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any OFFI-
701 CER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or through
702 them, from any and all claims, losses or demands, including, but not limited to, personal injury and property damage and all of the
703 consequences thereof, whether known or not, which may arise from the presence of termites or other wood-boring insects, radon, lead-
704 based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage disposal system
705 or deficiencies in the on-site water service system, or any defects or conditions on the Property. Should Seller be in default under the
706 terms of this Agreement or in violation of any Seller disclosure law or regulation, this release does not deprive Buyer of any right to pur-
707 sue any remedies that may be available under law or equity. This release will survive settlement.

708 **29. REAL ESTATE RECOVERY FUND (9-05)**

709 A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real
710 estate licensee (or a licensee's affiliates) owing to fraud, misrepresentation, or deceit in a real estate transaction and who have been

711 Buyer Initials: _____

Seller Initials: _____   Untitled

DocuSign Envelope ID FFD003E1-42A1-4B89-9E3E-0796FE0E66FB

712  unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-
713  3658 or (800) 822-2113 (within Pennsylvania) and (717) 783-4854 (outside Pennsylvania).
714  **30. COMMUNICATIONS WITH BUYER AND/OR SELLER (1-10)**
715      (A) If Buyer is obtaining mortgage financing, Buyer shall promptly deliver to Broker for Buyer, if any, a copy of all Loan Estimate(s)
716      and Closing Disclosure(s) upon receipt.
717      (B) Wherever this Agreement contains a provision that requires or allows communication/delivery to a Buyer, that provision shall be
718      satisfied by communication/delivery to the Broker for Buyer, if any, **except for documents required to be delivered pursuant to**
719      **Paragraph 16.** If there is no Broker for Buyer, those provisions may be satisfied only by communication/delivery being made
720      directly to the Buyer, unless otherwise agreed to by the parties. Wherever this Agreement contains a provision that requires or allows
721      communication/delivery to a Seller, that provision shall be satisfied by communication/delivery to the Broker for Seller, if any. If
722      there is no Broker for Seller, those provisions may be satisfied only by communication/delivery being made directly to the Seller,
723      unless otherwise agreed to by the parties.
724  **31. HEADINGS (4-14)**
725      The section and paragraph headings in this Agreement are for convenience only and are not intended to indicate all of the matter in the
726      sections which follow them. They shall have no effect whatsoever in determining the rights, obligations or intent of the parties.
727  **32. SPECIAL CLAUSES (1-10)**
728      (A) The following are attached to and made part of this Agreement if checked:
729          ☐ Sale & Settlement of Other Property Contingency Addendum (PAR Form SSP)
730          ☐ Sale & Settlement of Other Property Contingency with Right to Continue Marketing Addendum (PAR Form SSPCM)
731          ☐ Sale & Settlement of Other Property Contingency with Timed Kickout Addendum (PAR Form SSPTKO)
732          ☐ Settlement of Other Property Contingency Addendum (PAR Form SOP)
733          ☐ Appraisal Contingency Addendum (PAR Form ACA)
734          ☒ Short Sale Addendum (PAR Form SHS)
735          ☐ _____
736          ☐ _____
737          ☐ _____
738      (B) Additional Terms: Either Short Sale Approval or Federal Court Ordered Sale.  Buyer has
739          the option of canceling this agreement of sale in the event clear title cannot be
740          conveyed no later than December 31, 2018
741
742
743
744  Buyer and Seller acknowledge receipt of a copy of this Agreement at the time of signing.

745  **This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original and which counterparts**
746  **together shall constitute one and the same Agreement of the Parties.**

747  **NOTICE TO PARTIES: WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT.** Parties to this transaction are advised
748  to consult a Pennsylvania real estate attorney before signing if they desire legal advice.

749  Return of this Agreement, and any addenda and amendments, including **return by electronic transmission,** bearing the signatures
750  of all parties, constitutes acceptance by the parties.

751  _____/_____ Buyer has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.

752  _____/_____ Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.

753  _____/_____ Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit money)
754          before signing this Agreement.

755  _____/_____ Buyer has received the Lead Based Paint Hazards Disclosure, which is attached to this Agreement of Sale. Buyer has
756          received the pamphlet Protect Your Family from Lead in Your Home (for properties built prior to 1978).

757  BUYER _____    DATE  9/11/17
            Thomas DeStefano or assigns

758  BUYER _____    DATE _____

759  BUYER _____    DATE _____

760  Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code § 35.336.
761  Seller has received a statement of Seller's estimated closing costs before signing this Agreement.

762  SELLER _____    DATE  9/12/17
            Nancy McDermott poa for Mary

763  SELLER _____    DATE _____
            McDermott

764  SELLER _____    DATE _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                Untitled

**ADDENDUM/ENDORSEMENT TO AGREEMENT OF SALE**                                                                **ASA**

1   **PROPERTY** 6423 Radcliffe St
2                Bristol, PA  19007-5718
3   **SELLER** Nancy McDermontt pos for Mary,, McDermott
4   **BUYER** Thomas DeStefano or assigns
5   **DATE OF AGREEMENT** June 18, 2018
6
7   The sale price shall be changed to $135,000.
8
10  The settlement date shall be on or before June 29, 2018.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37  All other terms and conditions of the Agreement of Sale remain unchanged and in full force and effect.
38
39  **WITNESS**_____  **BUYER** _Thomas F. DiStefano_  **DATE** _____
40                                            Thomas DeStefano or assigns
41
42  **WITNESS**_____  **BUYER** _____  **DATE** _____
43
44
45  **WITNESS**_____  **BUYER** _____  **DATE** _____
46
47
48  **WITNESS**_____  **SELLER** _Nancy McDermott_ poa for Mary McDermott  **DATE** 6/19/18
49                                            Nancy McDermontt pos for Mary,
50
51  **WITNESS**_____  **SELLER** _____  **DATE** _____
52                                            McDermott
53
54  **WITNESS**_____  **SELLER** _____  **DATE** _____
55

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 1993
6/01

Pennsylvania Association of REALTORS®

CBH Collegeville, 100 Springhouse Drive, Suite 100 Collegeville PA 19426
Phone: 610 489-7700          Fax:  610-489-1956          Dawn Burke                                  6423 Radcliffe St -
Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

**EXHIBIT B**

| A. | U. S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT SETTLEMENT STATEMENT | B. | TYPE OF LOAN |
|---|---|---|---|

**Cross Keys Abstract & Assurance, Inc.**
100 Brandywine Blvd.
Suite 302
Newtown, Pennsylvania 18940
(215)322-6633 fax: (215)322-6623

1. ☐ FHA 2. ☐ FMHA 3. ☐ CONV. UNINS.
4. ☐ VA 5. ☐ CONV. INS.
6. File Number: CKA17399    7. Loan Number:
8. Mortgage Ins. Case No.:

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked (poc) were paid outside the closing. They are shown here for informational purposes and are not included in the totals.

D. Buyer: Thomas DeStefano
E. Seller: Mary McDermott
F. Lender:
G. Property: 6423 Radcliffe Street
Bristol, Bucks County, Pennsylvania  19007
Bristol Township
Bucks County, Pennsylvania
H. Settlement Agent: Cross Keys Abstract & Assurance, Inc.
   Place of Settlement: 100 Brandywine Blvd., Suite 302, Newtown, Pennsylvania 18940  Bucks County
I. Settlement Date: June 29, 2018

| J. | Summary of Buyer's Transaction | | K. | Summary of Seller's Transaction | |
|---|---|---|---|---|---|
| **100.** | **Gross Amount Due From Buyer:** | | **400.** | **Gross Amount Due To Seller:** | |
| 101. | Contract Sales Price | 135,000.00 | 401. | Contract Sales Price | 135,000.00 |
| 102. | Personal Property | | 402. | Personal Property | |
| 103. | Settlement Charges to Buyer (line 1400) | 3,637.70 | 403. | | |
| | **Adjustments for Items Paid by Seller in Advance:** | | | **Adjustments for Items Paid by Seller in Advance:** | |
| 106. | City / Town Taxes | | 406. | City / Town Taxes | |
| 107. | County / Twp Taxes Jun 30, 2018 thru Dec 31, 2018 | 979.74 | 407. | County / Twp Taxes Jun 30, 2018 thru Dec 31, 2018 | 979.74 |
| 108. | Assessments | | 408. | Assessments | |
| 109. | School Taxes Jun 30, 2018 thru Jun 30, 2018 | 18.61 | 409. | School Taxes Jun 30, 2018 thru Jun 30, 2018 | 18.61 |
| **120.** | **Gross Amount Due from Buyer:** | 139,636.05 | **420.** | **Gross Amount Due to Seller:** | 135,998.35 |
| **200.** | **Amounts Paid by or in Behalf of Buyer:** | | **500.** | **Reductions in Amount Due to Seller:** | |
| 201. | Deposit / Earnest Money | 1,000.00 | 501. | Excess Deposit (see instructions) | |
| 202. | Principal Amount of New Loan | | 502. | Settlement Charges to Seller (Line 1400) | 1,850.00 |
| 203. | Existing Loan(s) | | 503. | Existing Loan(s) | |
| 204. | | | 504. | Payoff of 1st Mort BOOK#5345/PAGE#1285 LOAN# to Shellpoint Mortgage Servicing | 134,148.35 |
| 205. | | | 505. | Payoff of Second Mortgage | |
| 206. | | | 506. | Purchase Money Mortgage | |
| 207. | | | 507. | Overnight Payoff to Cross Keys Abstract | |
| 208. | | | 508. | Satisfaction Fee to Cross Keys Abstract | |
| | **Adjustments for Items Unpaid by Seller:** | | | **Adjustments for Items Unpaid by Seller:** | |
| 210. | City / Town Taxes | | 510. | City / Town Taxes | |
| 211. | County / Parish Taxes | | 511. | County / Parish Taxes | |
| 212. | Assessments | | 512. | Assessments | |
| 213. | School Taxes Jul 1, 2017 thru Jun 29, 2018 | | 513. | School Taxes Jul 1, 2017 thru Jun 29, 2018 | |
| **220.** | **Total Paid by / for Buyer:** | 1,000.00 | **520.** | **Total Reductions in Amount Due Seller:** | 135,998.35 |
| **300.** | **Cash at Settlement from / to Buyer:** | | **600.** | **Cash at Settlement to / from Seller:** | |
| 301. | Gross Amount due from Buyer (line 120) | 139,636.05 | 601. | Gross Amount due to Seller (line 420) | 135,998.35 |
| 302. | Less Amount Paid by/for Buyer (line 220) | 1,000.00 | 602. | Less Reductions Amount due Seller (line 520) | 135,998.35 |
| **303.** | **Cash From Buyer:** | **$138,636.05** | **603.** | **Cash From Seller:** | **$0.00** |

**L.        Settlement Charges**

| | | Paid from Buyer's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|---|
| **700.** | **Total Sales / Broker's Commission:** | | |
| | **Based on Price  $135,000.00** | | |
| | **Division of Commission as follows** | | |
| 701. | | | |
| 702. | | | |
| 703. | Commission Paid at Settlement | | |
| 704. | Flat Commission | | |
| **800.** | **Items Payable in Connection with Loan:** | | |
| 801. | Loan Origination Fee | | |
| 802. | Loan Discount | | |
| 803. | Appraisal Fee | | |
| 804. | Credit Report | | |
| 805. | Lender's Inspection Fee | | |
| 806. | Tax Service Fee | | |
| 807. | Flood Certification | | |
| **900.** | **Items Required by Lender to be Paid in Advance:** | | |
| 901. | Daily interest charge from Jun 29, 2018 | | |
| 902. | Mortgage Insurance Premium | | |
| 903. | Hazard Insurance Premium | | |
| 904. | Flood Insurance Premium | | |
| **1000.** | **Reserves Deposited with Lender:** | | |
| 1001. | Hazard Insurance | | |
| 1002. | Mortgage Insurance | | |
| 1003. | City Property Taxes | | |
| 1004. | County Property Taxes | | |
| 1005. | Annual Assessments | | |
| 1006. | School Taxes | | |
| **1100.** | **Title Charges:** | | |
| 1101. | Deed Preparation Fee | | |
| 1102. | Settlement Fee to Cross Keys Abstract | | 500.00 |
| 1103. | Courier Fee | | |
| 1104. | Wire Fee | | |
| 1105. | Download Electronically Transmitted Mortgage Documents | | |
| 1106. | Notary Fees to Settlement Officer | 30.00 | |
| 1107. | Attorney Fees | | |
| | (includes above item numbers: | | |
| 1108. | Title Insurance to Cross Keys Abstract & Assurance, Inc. | 1,346.95 | |
| | (includes above item numbers: | | |
| 1109. | Lender's Coverage              0.00 | | |
| 1110. | Owner's Coverage          135,000.00 | | |
| **1200.** | **Government Recording and Transfer Charges:** | | |
| 1201. | Recording Fees:        Deed    85.75   Mortgage        0.00   Releases      0.00 | 85.75 | |
| 1202. | City/County Tax/Stamps:        Deed    1,350.00   Mortgage    0.00 | 1,350.00 | |
| 1203. | State Tax/Stamps:        Deed    1,350.00   Mortgage    0.00 | | 1,350.00 |
| 1204. | Deed Registration | | |
| 1205 | | | |
| **1300.** | **Additional Settlement Charges:** | | |
| 1301. | Buyer Conveyancing Fee to CK Conveyancing LLC | 325.00 | |
| 1302. | Seller Conveyancing Fee | | |
| 1303. | Water-Aqua not lienable, client to call for service | | |
| 1304. | Final Sewer TO FOLLOW ESTIMATE to Bristol Twp Sewer | | 500.00 |
| **1400.** | **Total Settlement Charges (Enter on line 103, Section J and line 502, Section K)** | **$3,637.70** | **$1,850.00** |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement.

Buyer: _____        Seller: _____
            Thomas DeStefano                                              Mary McDermott

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with the instructions of the parties hereto.
                                                                                              FA

Settlement Agent: _____        Date:  June 29, 2018
            Lisa A. McLean

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see Title 18 U.S. Code Section 1001 and Section 1010.

P.O. Box 10826
Greenville, SC 29603-0826



## Shellpoint
Mortgage Servicing

Phone Number: 866-825-2174
Fax: 866-467-1187
Email: finalssdocs@shellpointmtg.com

Hours of Operation
Mon - Thurs: 8:00AM-6:00PM
Fri: 8:00AM-5:00PM



### Instructions to Closing Agent

1. Have seller review Agreement to Release Collateral Interest
2. Follow all stipulations in the Agreement to Release Collateral Interest
3. Return via fax or email the signed:
   A. Final settlement statement
   B. Signed Agreement to Release Collateral
   C. Junior lien approval letter(s)
   D. Wire transfer confirmation
   E. The signed short sale affidavit(if applicable).

4. Please call our office with the wire confirmation number or the overnight mail tracking ID. If you are sending funds by wire you must include our loan number in the "reference" line of the wire to ensure that funds are posted in a timely manner.

### Wiring and Overnight Instructions

Wiring Instructions
Bank: Wells Fargo Bank
ABA Number: 121000248
Account Number: 2020050813199
** Reference: 0578149716

Overnight Mail Address
Shellpoint Mortgage Servicing
Attn: Loss Mitigation / 866-825-2174
55 Beattie Place, Suite 110 (MS 157)
Greenville, SC 29601





## Shellpoint
### Mortgage Servicing



P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED

S-SFRECS20  L-081  R-106
P8EGHN00100015 -  I00106
MARY MCDERMOTT
1672 MANHEIM PIKE
LANCASTER PA 17601-3028

05/31/2018

## Agreement to Release Collateral Interest

RE: 0578149716

Property Address: 6423 Radcliffe St  Bristol, PA 19007

Seller: Mary McDermott

Total Debt Payoff Amount as of **06/29/2018: $407,632.02**

Shellpoint Mortgage Servicing ("Shellpoint") has obtained investor approval to release the collateral interest for an amount less than the total due on this loan, subject to the terms and conditions listed below.  By  06/29/2018, we must receive the final Settlement Statement, all of the other final approved documents, and no less than the full amount of short sale proceeds specified within this document.

1.  Shellpoint is to receive proceeds in an amount not less than $134,148.35 on or before **06/29/2018**. Proceeds must be remitted in certified funds and sent by overnight mail or by wire. The amount is calculated as a minimum. In the event that the net proceeds from the sale exceed the minimum payoff amount, the excess proceeds must be remitted to Shellpoint.  **This Deficiency Waiver Agreement is provided to you in connection with the promissory note ("Note") secured by the property located at 6423 Radcliffe St  Bristol,  PA19007. Upon receipt of certified funds, Shellpoint  HEREBY CANCELS any remaining indebtedness excluding any contribution required from the (Seller) under that certain Note and Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated 03/15/2007, provided that the "short sale" is completed in accordance with the approved terms and conditions.**

    | Wiring Instructions | Overnight Mail Address |
    |---|---|
    | Bank: Wells Fargo Bank | Shellpoint Mortgage Servicing |
    | ABA Number: 121000248 | Attn: Loss Mitigation / 866-825-2174 |
    | Account Number: 2020050813199 | 55 Beattie Place, Suite 110 (MS 157) |
    | ** Reference 0578149716 | Greenville, SC  29601 |

2.  Closing Costs have been negotiated and agreed upon as of 05/31/2018 as follows:
    a.  Contract Sale Price: $135,000.00
    b.  Total closing costs not to exceed $851.65
    c.  Maximum amount allowed for incentive $0.00

3.  Seller is to receive no proceeds from this transaction other than relocation assistance or incentive (if applicable)

4.  Approval is contingent upon review of final settlement statement.  If the conditions of the short sale approval are not met, we will cancel this offer.

5.  The seller may not incur any obligations for repairs or expenses which would reduce the required minimum payoff. All repairs are the responsibility of the borrower.

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

# Shellpoint
### Mortgage Servicing
Phone Number: 866-825-2174
Fax: 866-467-1187
Email: finalssdocs@shellpointmtg.com



| | |
|---|---|
| Servicer: Shellpoint Mortgage Servicing | Servicer Loan Number: 0578149716 |
| Address of Property: 6423 Radcliffe St  Bristol. PA 19007 | |
| Date of Purchase Contract: 12/01/2017 | Investor: BANK OF NEW YORK AS TRUSTEE FOR CWABS 2007-5 |
| Seller: Mary McDermott | Buyer: Thomas DeStefano |
| Seller's Agent/Listing Agent:NA | Buyer's Agent: NA |

Escrow Closing Agent: Cross Keys Abstract & Assurance. Inc.

This Short Sale Affidavit ("Affidavit") is given by the Seller(s), Buyer(s), Agent(s), and Facilitator to the Servicer and the Investor of the mortgage loan secured by the Property ("Mortgage") in consideration for the mutual and respective benefits to be derived from the short sale of the Property.

NOW. THEREFORE, the Seller(s). Buyer(s). Agent(s). and Facilitator do hereby represent, warrant and agree under the pains and penalties of perjury, to the best of each signatory's knowledge and belief, as follows:

(a)   The sale of the Property is an "arm's length" transaction, between Seller(s) and Buyer(s) who are unrelated and unaffiliated by family, marriage, or commercial enterprise;

(b)   There are no agreements, understandings or contracts between the Seller(s) and Buyer(s) that the Seller(s) will remain in the Property as tenants or later obtain title or ownership of the Property, except that the Sellers(s) are permitted to remain as tenants in the Property for a short term, as is common and customary in the market but no longer than ninety (90) days, in order to facilitate relocation;

(c)   Neither the Sellers(s) nor the Buyer(s) will receive any funds or commissions from the sale of the Property except that the Seller(s) may receive a payment if it is offered by the Servicer, approved by the Investor and, if the payment is made at closing of the short sale of the Property, reflected on the Settlement Statement;

(d)   There are no agreements, understandings or contracts relating to the current sale or subsequent sale of the Property that have not been disclosed to the Servicer;

(e)   All amounts to be paid to any person or entity, including holders of other liens on the Property, in connection with the short sale have been disclosed to and approved by the Servicer and will be reflected on the Settlement Statement;

(f)   Each signatory understands, agrees and intends that the Servicer and the Investor are relying upon the statements made in is Affidavit as consideration for the reduction of the payoff amount of the Mortgage and agreement to the sale of the Property;

(g)   A signatory who makes a negligent or intentional misrepresentation agrees to indemnify the Servicer and the Investor for any and all loss resulting from the misrepresentation including, but not limited to, repayment of the amount of the reduced payoff of the Mortgage;

(h)   This Affidavit and all representations, warranties and statements made herein will survive the closing of the short sale transaction; and

(i)   Each signatory understands that a misrepresentation may subject the person making the misrepresentation to civil and/or criminal liability.

Seller Signature      Mary McDermott      Date

Buyer Signature      Thomas DeStefano     Date

Seller's Agent Signature     NA      Date

Buyer's Agent Signature     NA      Date

Escrow Closing Agent's Signature  Cross Keys Abstract & Assurance, Inc.  Date

# Shellpoint
### Mortgage Servicing

Phone Number: 866-825-2174
Fax: 866-467-1187
Email: finalsdocs@shellpointmtg.com



Servicer: Shellpoint Mortgage Servicing

Address of Property: 6423 Radcliffe St  Bristol, PA 19007

Date of Purchase Contract: 12/01/2017

Seller: Mary McDermott

Seller's Agent/Listing Agent:NA

Escrow Closing Agent: Cross Keys Abstract & Assurance, Inc.

Servicer Loan Number: 0578149716

Investor: BANK OF NEW YORK AS TRUSTEE FOR CWABS 2007-5

Buyer: Thomas DeStefano

Buyer's Agent: NA

## SHORT SALE CONDITIONAL WAIVER

I am prohibited by law from signing the Short Sale Affidavit for this transaction. By signing this conditional waiver, I agree that I will not act as the closing agent on a subsequent transaction involving the subject property within one year of the closing of this short sale transaction.

_____     _____

Escrow Closing Agent's Name                                          Date

_____     _____

Escrow Closing Agent's Signature                                     Date

**Please read the following important notices as they may affect your rights.**

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

**Attention Servicemembers and Dependents:** The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service. Counseling for covered servicemembers is available from Military OneSource (800-342-9647) and the United States Armed Forces Legal Assistance or other similar agencies. For more information, please visit the Military OneSource website www.militaryonesource.mil/.

**Notice of Error or Information Request Address:** You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan. If you want to request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Informational Request, please write to us at the following address: Shellpoint Mortgage Servicing P.O. Box 10826 Greenville, SC 29603-0826

The following is a Spanish translation of the information provided above.

**Lea por favor las siguientes avisos importantes que puedan afectar sus derechos.**

Esto es un intento de cobrar una deuda y cualquier información obtenida se utilizará para ello. Esta comunicación es de un cobrador de deudas.

Si usted es un cliente en situación de bancarrota o un cliente que ha recibido una descarga de bancarrota de la deuda: tenga en cuenta que este aviso es para informarle de la situación de su préstamo hipotecario. Este aviso no constituye una exigencia de pago ni un aviso de responsabilidad civil contra ninguno de los destinatarios de la presente notificación, que pudiese haber recibido un descargo de este tipo de deuda de conformidad con la legislación vigente sobre bancarrota o que pudiera ser objeto de suspensión automática en virtud de Sección 362 del Código de Bancarrota de los Estados Unidos. No obstante, puede ser una notificación de una posible aplicación de gravamen sobre la propiedad como garantía, que aún no ha sido descargada en su proceso de bancarrota.

**Atención Miembros del Servicio Militar y Dependientes:** Ley de Amparo Civil para miembros del servicio militar y ciertas leyes estatales proporcionan protecciones importantes para usted, incluyendo protecciones de tasas de interés y prohibiendo la ejecución hipotecaria bajo la mayoría de las circunstancias durante y doce meses después del miembro del servicio militar u otro servicio. Asesoramiento para militares con cobertura esta disponible de Military OneSource (800-342-9647) y la Asistencia Legal de las Fuerzas Armadas de Estados Unidos o de otras agencias similares. Para más información por favor visite el sitio web de Military OneSource www.militaryonesource.mil/.

**Aviso de Error o la Dirección de Petición de Información** Usted tiene ciertos derechos en virtud de la ley federal relacionados con la resolución de errores en el servicio de su préstamo y la solicitud de información sobre su préstamo. Si desea solicitar información sobre su préstamo o si usted cree que un error ha ocurrido en el servicio de su préstamo y desea presentar una resolución de errores o solicitud de información, por favor escríbanos a la siguiente dirección: Shellpoint Mortgage Servicing P.O. Box 10826 Greenville, SC 29603-0826

The following is a Chinese translation of the information provided above.

**请阅读以下重要通知，因为它们可能会影响您的权利。**

这是试图进行收债的一种尝试，所获取的任何信息均会用于收债目的。此信函由收债人发出。

如果您是破产客户，或是获得本债务破产免责的客户：请注意，本通知旨在告知您抵押贷款的状态。本通知不构成对此文件的任何接受者，即根据适用的破产法而获此类债务的免责之人，或可能遭受《美国破产法典》第 362 章节的自动冻结之人的付款要求或个人责任通知。但是，此通知可能会执行针对抵押财产的留置权，该权利尚未被您的破产所免除。

**各服役人员及其家属，请注意：** 联邦《服役人员民事救助法案》及某些州法律会为您提供重要保护，包括在服役人员服役期或其他服务期之内以及十二个月之后在多数情况下的利率保护和禁止丧失抵押品赎回权。Military OneSource (800-342-9647) 和美国武装部队法律援助部门 (United States Armed Forces Legal Assistance) 或其他类似机构会为接受医疗服务的服役人员提供咨询服务。如需更多信息，请访问 Military OneSource 网站：www.militaryonesource.mil/。

**错误或信息请求通知致函** 根据联邦法律，您拥有某些关于解决您的贷款还本付息业务中的错误以及索取有关您贷款信息的权利。如果想索取有关您贷款的信息，或者是您认为您的贷款还本付息业务中出现错误，而想要提交 "错误决议" 或 "信息请求"，请写信给我们，地址如下：Shellpoint Mortgage Servicing P.O. Box 10826 Greenville, SC 29603-0826

If you prefer to receive communication in a language other than English, Spanish, or Chinese, please contact us at 866-825-2174 to speak with a translator in your preferred language about the servicing of your loan or a document you received.

P8EGHN00100015 I000112 S-SFRECS20 L-081 A-0578149716